UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------- X
                                                  :
DOMETA MOYE,                                      :
                                                  :
    *Plaintiff*,                                  :   Civil Action No.  2:21-cv-646
                                                  :
            v.                               :   COMPLAINT
                                                  :
                                                  :   Filed Electronically
VERLAND FOUNDATION,                               :
                                                  :   Jury Trial Demanded
    *Defendant.*                                  :
                                                  :
------------------------------------------------- x

**COMPLAINT**

**NATURE OF THE ACTION, JURISDICTION AND VENUE**

1. This is an individual action under the Civil Rights Act of 1866 (42 U.S.C. §1981) to correct unlawful employment practices on the basis of race and to make Plaintiff whole.

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331.  This action is authorized and instituted pursuant to Section 1981.

3. The actions and policies alleged to be unlawful were committed in and around Allegheny County, PA, where Plaintiff worked and where Defendant maintains a facility and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and the venue is proper.

4. Plaintiff has filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC) and will amend this complaint to include claims for discrimination on the basis of

race under the respective federal and state laws upon receiving a Right to Sue.

5. There is no administrative exhaustion requirement under Section 1981.

## PARTIES

6. Plaintiff Dometa Moye (hereinafter referred to as "Plaintiff" or "Moye"), has resided at all relevant times at 3002 Estate Drive, Oakdale, PA 15071. Plaintiff was employed by Defendant from on or about June 25, 2012, until on or about January 5, 2021, first as a Staff Nurse, then a Charge Nurse, then the Assistant Director of Nursing, then the Health Services Director ( from in or about June 2018 until January 5, 2021).

7. Defendant Verland Foundation (hereinafter referred to as "Defendant" or "Verland"), is a non-profit family of community homes (and an Intermediate Care Facility (ICF)) and services supporting individuals with intellectual disabilities. Defendant's programs and homes are located in Allegheny, Beaver, Fayette and Mercer Counties with its main campus (and the ICF) in Sewickley, PA (212 Iris Road, Sewickley, PA 15143).

8. Defendant is a person within the meaning of Section 1981.

9. At all relevant times, Defendant has been subject to Section 1981.

## BACKGROUND AND STATEMENT OF CLAIMS

10. As noted in Paragraph 6, above, Plaintiff was employed by Defendant as a Staff Nurse, a Charge Nurse, then the Assistant Director of Nursing and then the Health Services Director (the equivalent of the Director of Nursing) from on or about June 25, 2012, until January 5, 2021.

11. Plaintiff was promoted from Assistant Director of Nursing to Health Services Director in or about June 2018 and remained in that position until January 5, 2021, when she was terminated.

12. Plaintiff is a black female.

13. Plaintiff possesses the necessary skills and qualifications to perform the essential functions of a Staff Nurse, a Charge Nurse, an Assistant Director of Nursing, the Health Services Director and other positions involving health care within Defendant's operations.

14. Plaintiff performed the duties of each of her positions satisfactorily.

15. In or about November 2020 Plaintiff took a two-week leave of absence related to COVID (tested positive).

16. Plaintiff applied for workers' compensation benefits on the basis that she contracted COVID at work.

17. Plaintiff quarantined for fourteen days and then returned to work.

18. Plaintiff was never informed of any deficiencies in her job performance prior to November 2020.

19. Plaintiff never received a formal, or informal, job evaluation prior to November 2020.

20. There were no formal, or informal, job evaluations performed for any of the Verland employees from the time Plaintiff began her employment in June 2012 through November 2020.

21. Plaintiff returned to work on December 7, 2020.

22. Plaintiff resumed her duties upon returning to work.

23. On or about December 16, 2020, Plaintiff was presented with a Performance Improvement Plan (PIP)(dated December 15, 2020).

24. Plaintiff had never received anything like a PIP before December 16, 2020, or for that matter received any written criticism of her work.

25. No one at Verland had received a PIP at any time during Plaintiff's employment from June 2012 until December 16, 2020.

26. In the PIP Verland asserted Plaintiff had failed to perform certain duties satisfactorily.

27. The majority of the deficiencies alleged in the PIP had occurred, or had allegedly only been discovered, while Plaintiff was on medical leave.

28. The other alleged deficiencies in the PIP were either misstatements of the facts, exaggerated in their significance, or the responsibility of employees other than Plaintiff.

29. Verland never spoke to Plaintiff about any of the alleged deficiencies in the PIP prior to December 16, 2020.

30. Plaintiff was told she had 30 days to "demonstrate improvement and commitment."

31. Plaintiff acknowledged she had received the PIP, but did not sign the PIP because she strongly disagreed with the substance of the PIP.

32. Plaintiff told Verland that she was open to constructive criticism.

33. Plaintiff also told Verland that she would continue to do her best to fulfill her duties satisfactorily, as she had always done.

34. Defendant had no further communication with Plaintiff regarding the PIP from the time she was given the PIP on December 16, 2020, until she was terminated on January 5, 2021.

35. On January 5, 2021, the Head of HR and Plaintiff's immediate manager, the VP of Clinical Operations, came to Plaintiff's office.

36. Plaintiff was informed she was being terminated.

37. Plaintiff was told she was not communicating with her manager (the VP of Clinical Operations) about leaving at the end of the day.

38. The practice had long been that when Plaintiff left the premises prior to the standard shift time that she would inform the clinical nurse on duty:  Plaintiff had never been required to report this to her immediate manager, and it had never been an issue before.

39. Plaintiff regularly worked at the facility before the standard shift times and well into the evenings and on the weekends outside the normal shift times.

40. Plaintiff was on call 24/7.

41. Plaintiff was also told that there were areas identified by the nursing consultant (issues that occurred during Plaintiff's predecessor's tenure and that had been corrected) that were still an issue, and that there was a call-off by one of the nurses that Plaintiff did not report to her manager.

42. Verland said nothing about the progress, or lack of progress, on the PIP.

43. Plaintiff explained to Verland why the reasons being given to her on January 5, 2021, for her termination were inaccurate and were inconsistent with how matters had been handled

for Plaintiff and the other employees before.

44. Verland nevertheless terminated Plaintiff effective January 5, 2021.

45. The reasons given for her termination were either false, exaggerated, taken out of context or inconsistent with the way Verland has treated other employees.

46. Plaintiff was replaced by a white woman.

47. The white woman has inferior qualifications.

48. Plaintiff was treated differently because of her race (black).

49. Plaintiff was terminated because of her race (black).

50. Caucasian employees were not disciplined as Plaintiff was for the same or similar performance issues.

51. Defendant's false, exaggerated, out-of-context and/or inconsistent reasons for Plaintiff's termination were a pretext for race discrimination.

52. Defendant's actions are a violation of Section 1981.

53. Defendant's racial discrimination against Plaintiff was knowing and willful.

54. Plaintiff is seeking lost wages; lost benefits (including retirement and health benefits); compensatory damages; punitive damages; attorney's fees; and, costs for the violations of Section 1981.

**COUNT I:  Section 1981 – Race Discrimination**

55. Plaintiff incorporates by reference the preceding paragraphs of this complaint as though the same were set forth fully herein.

56. Plaintiff is in the protected group based on race (black).

57. Plaintiff was treated less favorably by Defendant than Caucasians in similar circumstances.

58. Plaintiff was qualified for her position as a Health Services Director/Director of Nursing.

59. Plaintiff performed her job satisfactorily throughout the course of her employment with Defendant.

60. Defendant took adverse employment actions against Plaintiff, including termination of her employment, as a result of disparate treatment based on race.

61. Defendant's reasons for Plaintiff's termination were pretextual.

62. Plaintiff was replaced by a white woman.

63. The white woman has inferior qualifications as compared to Plaintiff.

64. Defendant treated Plaintiff less favorably than whites, gave false reasons for her termination, and replaced her with a white woman because of Plaintiff's race (black).

65. Defendant's actions constitute racial discrimination in violation of Section 1981.

66. **Defendant's racial discrimination against Plaintiff was intentional and knowing.**

67. **As a result of Defendant's discriminatory conduct, Plaintiff has suffered tangible and intangible losses in the form of lost wages, lost benefits, lost promotional opportunities, humiliation and mental anguish and damage to reputation.**

68. **Plaintiff seeks to recover an amount equal to these tangible and intangible losses, as well as interest, attorneys' fees and costs and punitive damages.**

## PRAYER FOR RELIEF

69. **WHEREFORE, Plaintiff respectfully requests that this Court:**

   A. **Grant a permanent injunction enjoining Defendant, its officers, successors, and assigns and all persons in active concert or participation with them from engaging in unlawful employment actions or practices which violate Section 1981.**

   B. **Order Defendant to make Plaintiff whole by paying appropriate back pay with prejudgment interest, in amounts to be proven at trial, and other affirmative relief – including reinstatement - necessary to eradicate the effects of its unlawful employment practices.**

   C. **Order Defendant to pay the costs and reasonable attorney's fees incurred by Plaintiff.**

   D. **Grant such further relief as the Court deems necessary and proper, including punitive damages.**

**Respectfully submitted,**

**  /s/Joseph H. Chivers**
**Joseph H. Chivers, Esquire**

|  |  |
|---|---|
|  | **The Employment Rights Group, LLC**<br>**PA ID No. 39184**<br>**Suite 650**<br>**100 First Avenue**<br>**Pittsburgh, PA  15222-1514**<br>**jchivers@employmentrightsgroup.com**<br>**(412) 227-0763 / (412) 774-1994 FAX** |
| **Dated: <u>May 14, 2021</u>** | **Counsel for Plaintiff**<br>**Dometa Moye** |